Argued April 4, affirmed May 15, 1968

IN THE MATTER OF THE ESTATE OF
HAROLD M. PEERY, DECEASED.

SMITH ET AL, *Contestants-Appellants, v.*
SURRATT, *Proponent-Respondent.*
440 P. 2d 862

*Stanley R. Darling,* Eugene, argued the cause for contestants-appellants. On the briefs were Darling, Vonderheit, Hershner & Hunter, Eugene, and Norman K. Winslow, Salem.

*Richard H. Allen,* Salem, argued the cause for proponent-respondent. On the brief were Allen, Storz, Pierson & Barlow, and Dale Pierson, Salem.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

PER CURIAM.

This is a will contest. The contestants are the two children of the testator plus two persons who had been

named in an earlier will and were omitted from the
will admitted to probate. The proponent of the will,
Surratt, was a friend who had been associated for sev-
eral years with the testator in a mining venture. The
contestants claim that Surratt exercised undue influ-
ence on the testator to induce him to leave the bulk
of his estate to Surratt. The trial court found for pro-
ponent. Contestants appeal.

The trial of the case took eight days and over 1,000
pages of testimony are contained in the transcript.
The trial court, in a written opinion, made a detailed
analysis of the evidence and we find no purpose in re-
peating here. The questions on appeal involve the
trial court's interpretation and analysis of the evi-
dence. Both parties recognize that the legal issues are
determined by *In re Reddaway's Estate,* 1958, 214 Or
410, 329 P2d 886, and like cases.

The testator, Dr. Harold Peery, had been a suc-
cessful physician. His marital and family life had
been stormy. He was described as a person of superior
intellect, strong-willed, profane and interesting to
know. In 1955, he first became acquainted with Sur-
ratt, the proponent, and soon became interested with
the latter in a venture for mining mercury in eastern
Oregon. The mining venture became the dominating
influence of Dr. Peery's life until his death in 1965.
He invested considerable sums of money in the project.

In 1959, he executed a will in which he named the
contestants as the beneficiaries. He executed a codicil
to this will in 1961. Contestants allege and pray that
the 1959 will is the one that should be admitted for
probate. In 1964, he executed another will in which
Surratt was named the principal beneficiary. These
three testamentary documents were prepared and exe-
cuted with the assistance of an attorney of Dr. Peery's

choice; an attorney whom he had known and consulted for several years. These testamentary documents were prepared with independent advice. And, insofar as it appears in the record, were the result of Dr. Peery's intent and design.

In 1965, shortly before his death, Dr. Peery executed the contested will. The 1965 will dropped a beneficiary named in the 1964 will and increased the specific bequests made to his two children. Otherwise the will was unchanged. Surratt still received the bulk of the estate.

The 1965 will was not made by the same attorney who prepared the three previous wills. Contestants claim that the latter attorney was one chosen by Surratt, and that the testator, Dr. Peery was, therefore, deprived of independent advice. The undue influence is said to extend to the preparation and execution of the 1965 will by the lawyer of Surratt's choosing.

This particular facet of the case is significant because in order to succeed the contestants must overcome both the 1964 and 1965 wills. In oral argument contestants stated that the trial court had precluded them from challenging the 1964 will. We can find no such ruling in the record. However, even though the 1964 will may not be in issue here, as claimed by contestants, that will, and the evidence of its preparation and execution, presents strong evidence against contestants' claim that the bequest to Surratt in the 1965 will was the product of overbearing influence by Surratt. If the 1964 will did not exist, then contestants extended arguments as to the alleged suspicious circumstances preceding the execution of the 1965 will would be more persuasive. But the suspicions voiced by contestants are outweighed by Dr. Peery's evident, unfettered intent expressed in the 1964 will. Both the

1964 and 1965 wills demonstrate a "continuity of purpose * * * indicating a settled intent in the disposition of his [Dr. Peery's] estate." *In re Estate of Elise Rosenberg,* 1952, 196 Or 219, 230, 246 P2d 858, 863; 1 Jaureguy & Love, Oregon Probate Law and Practice, § 324.

Therefore, we agree with the trial court that the evidence of undue influence does not meet the several tests set out in the *Reddaway* decision. We cannot find that the evidence justified a conclusion that the wills were the result of "devices which reasonable men regard as improper." *In re Reddaway's Estate, supra,* 214 Or at 419.

The trial judge fairly summarized the evidence in the following paragraph taken from his opinion:

"An extremely close relationship existed between Dr. Peery and Elmer Surratt, with the doctor placing great confidence in Elmer, but it does not appear that Elmer exerted superiority or dominance over the doctor, nor is there any evidence that Elmer was actively engaged in the initial creation of the terms of the Will or of its actual preparation, especially the one of February 1964, which was the point at which substantial change was made from earlier wills. The burden of proof did not shift to the proponent in this case as argued for by contestants."

Affirmed.